**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION**

DEBRA STORY                                                                                    PLAINTIFF

v.                                        Case No. 5:10CV00090 JLH

RICELAND FOODS, INC.                                                                DEFENDANT

**OPINION AND ORDER**

Debra Story commenced this action against Riceland Foods, Inc., alleging violations of Title

VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17 (2006), and the Arkansas Civil

Rights Act of 1993, Ark. Code Ann. § 16-123-107 (West 2010).  Specifically, Story alleges that she

was the victim of a hostile work environment in violation of Title VII and the Arkansas Civil Rights

Act and retaliation in violation of Title VII.[1] Riceland Foods has moved for summary judgment, and

Story has responded.  For the following reasons, the defendant's motion for summary judgment is

granted.

**I.**

In August of 2007, Debra Story interviewed for a job with Riceland Foods and was hired as

a Quality Assurance Lab Technician.  Story went through employee orientation and training.  As a

Quality Assurance Lab Technician, Story analyzed oil samples to determine whether the soy oil met

customer specifications.  She reported to Freddie Hill, Lab Supervisor, and Amy Watson, Lab

Manager.

---

[1] In count one of the complaint, Story contends that "Defendant, RICELAND FOODS, INC. constructively discharged DEBRA STORY because of her gender in violation of Title VII . . . ."  (Compl. ¶ 16.)  In her response to the summary judgment motion, however, Story disclaims any cause of action for constructive discharge.

Story received a number of disciplinary warnings while employed at Riceland Foods.  On July 22, 2008, Story received a "Note to Employee File" for excessive accidents.  On the note, Hill wrote that "Debra had 4 accidents in 10 months.  She should use caution while working."  (Def.'s Ex. 1 at 77.)  Between August and November of 2008, Story received three disciplinary warnings for errors in certificates of analysis that she had completed.  (*Id.* at 79-83.)  The first warning notice stated, "This is a repeated violation that has to be corrected.  It could lead to a suspension or termination."  (*Id*. at 79.)  The second warning resulted in a three-day suspension.  On the warning notice, Hill wrote, "the next will be terminated."  (*Id.* at 81.)  On the third warning notice, which Story received on November 15, 2008, Hill wrote, "The next time this will result in your termination."  (*Id.* at 83.)  Story did not dispute the warnings at the time she received them.

Story alleges that she was sexually harassed by two male employees of Riceland Foods on a regular basis while she worked there.  Clarence Avery, a packing floor supervisor, allegedly made inappropriate comments to Story and touched her in an inappropriate manner on a daily basis. Freddie Hill and Jennifer Lee reported that Avery did make comments that could be perceived as sexual but that his comments were made to everyone—not specifically to Story.  James Campbell, a driver in the Cogen Department, allegedly made sexual comments and threats to Story on three occasions and told her then-estranged husband, who also worked at Riceland Foods, of his intentions with Ms. Story on at least one occasion.  Story did not report Avery's conduct for fear of losing her job.  However, she did report Campbell's behavior to Lindy Rabeneck, Human Resources Director for Riceland.  Rabeneck told Story that she would talk to Campbell about the situation, and Campbell testified in his deposition that she did. Story alleges that Riceland Foods did not respond

properly to her allegations against Campbell. She also contends that Freddie Hill knew of Avery's inappropriate conduct yet did nothing.

Story's employment with Riceland Foods was terminated on December 17, 2008, for poor job performance. She subsequently filed a complaint with the Equal Employment Opportunity Commission ("EEOC") alleging sexual discrimination and retaliation.

## II.

A court should enter summary judgment if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986); *Cheshewalla v. Rand & Son Constr. Co.*, 415 F.3d 847, 850 (8th Cir. 2005).  The moving party bears the initial responsibility of demonstrating the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986).  If the moving party meets its burden, the nonmoving party must "come forward with 'specific facts showing that there is a *genuine issue for trial*.'"  *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1985) (quoting Fed. R. Civ. P. 56(e)) (emphasis in original). A genuine issue exists only if there is sufficient evidence to allow a jury to return a verdict for the nonmoving party.  *Anderson*, 477 U.S. at 249, 106 S. Ct. at 2511.

## III.

First, Riceland Foods alleges that it is entitled to summary judgment on Story's hostile work environment claims because Story has not established a prima facie case of discrimination.  To establish a prima facie case of sex discrimination based on hostile work environment, a plaintiff must

3

provide evidence that 1) she is a member of a protected group; 2) she was subjected to unwelcome harassment by a coworker; 3) the harassment was based on sex; 4) the harassment affected a term, condition, or privilege of her employment; and 5) the employer knew or should have known of the conduct and failed to take proper remedial action.[2]  *Cheshewalla v. Rand & Son Constr. Co.*, 415 F.3d 847, 850 (8th Cir. 2005); *Henthorn v. Capitol Comm'ns, Inc.*, 359 F.3d 1021, 1026 (8th Cir. 2004) (citing *Duncan v. Gen. Motors Corp.*, 300 F.3d 928, 933 (8th Cir. 2002)).  "Hostile work environment claims must meet 'demanding' standards and courts are to 'filter out' those complaints concerning the 'ordinary tribulations of the workplace.' " *Anderson v. Durham D & M, L.L.C.*, 606 F.3d 513, 519 (8th Cir. 2010) (quoting *Al-Zubaidy v. TEK Indus., Inc.*, 406 F.3d 1030, 1039 (8th Cir. 2005)).  Riceland Foods argues that Story has failed to meet this burden because she has not provided evidence that Riceland knew or should have known of any harassing conduct and failed to take proper remedial action.

## A.      Conduct of Clarence Avery

Riceland Foods argues that it did not have actual or constructive knowledge that Story was allegedly harassed by Clarence Avery.  Story contends that, although she never reported Avery's conduct while she was employed with Riceland Foods, the company knew or should have known that she was sexually harassed.  To support her argument, Story cites to statements made by Freddie Hill and Jennifer Lee during the EEOC investigation in 2009.  (Pl.'s Exs. 4-5.)  During the investigation, Hill told Lindy Rabeneck in Human Resources that "he has heard Avery say things that could be perceived as sexual, but Avery talks the same with everyone, jokes, laughs, says how good

---

[2] "Title VII and the Arkansas Civil Rights Act are governed by the same standards." *Anderson v. Family Dollar Stores of Ark., Inc.*, 579 F.3d 858, 862 (8th Cir. 2009) (affirming summary judgment for the defendant on both causes of action).

they look, etc., but . . . Avery says this to everyone." (Pl.'s Ex. 4.) Similarly, Jennifer Lee reported

that, although she has never seen Avery touch anyone inappropriately or say anything out of line,

"sometimes Avery says things to her that [have] made her feel a little uncomfortable. They are

things that could be construed as sexual." (Pl.'s Ex. 5.)

"An employer has actual notice of harassment when sufficient information either comes to

the attention of someone who has the power to terminate the harassment, or it comes to someone

who can reasonably be expected to report or refer a complaint to someone who can put an end to it."

*Sandoval v. Am. Bldg. Maint. Indus., Inc.*, 578 F.3d 787, 802 (8th Cir. 2009) (citing *Young v. Bayer

Corp.*, 123 F.3d 672, 674 (7th Cir. 1997)). Constructive notice, on the other hand, "is established

when the harassment was so severe and pervasive that management reasonably *should* have known

of it." *Watson v. Blue Circle, Inc.*, 324 F.3d 1252, 1259 (11th Cir. 2003) (emphasis added). "[A]n

employer may be charged with constructive knowledge of [ ] sexual harassment . . . if the harassment

was so broad in scope, and so permeated the workplace, *that it must have come to the attention of

someone authorized to do something about it.*" *Fall v. Ind. Univ. Bd. of Tr.*, 12 F. Supp. 2d 870, 882

(N.D. Ind. 1998) (emphasis added).

Story offers no evidence that Riceland Foods had actual notice of Avery's alleged

misconduct. Story readily admits that she did not tell Riceland Foods about the harassment until

after her termination. Based on the statements made by Hill and Lee, her supervisors knew that

Avery made comments in the lab that could have been construed as sexual. However, those

comments alone were not sufficiently severe or pervasive as to affect a term, condition, or privilege

of Story's employment at Riceland Foods. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 788,

118 S. Ct. 2275, 2283, 141 L. Ed. 2d 662 (1998) (determining that simple teasing, offhand

comments, and isolated incidents do not amount to discriminatory changes in the "terms and conditions of employment"); *Oncale v. Sundower Offshore Servs., Inc.*, 523 U.S. 75, 81, 118 S. Ct. 998, 1003, 140 L. Ed. 2d 201 (1998) (noting that Title VII is not intended to permit "courts and juries [to] mistake ordinary socializing in the workplace—such as male-on-male horseplay or intersexual flirtation—for discriminatory 'conditions of employment' "). Story offers no evidence that Riceland Foods actually knew that Avery directed any inappropriate comments at her specifically or touched her in an inappropriate manner.

Nor does Story provide evidence that Riceland Foods had constructive notice of the alleged harassment. Story testified in her deposition that, although the harassment occurred on a daily basis, she did not know if any of her coworkers ever witnessed it because they did not work in close proximity to her in the lab. Her testimony on the matter is as follows:

> Q    And where specifically in the lab would it be that Mr. Avery touched you in this fashion?
>
> A    When you walk in the side door—not the front door, but the side door—the majority of the analysis that I performed were directly to your left in a U-shaped area.
>
> Q    Now, are you saying that your co-workers work all in close proximity to you in the lab?
>
> A    I wouldn't say that, no.
>
> Q    Well, how far would a person be from where you might be working when Mr. Avery did this?
>
> A    One of them would be across the room, behind other equipment, running the analysis on the stuff that she had to do, 'cause we all didn't do oil.
>
> Q    Well, that's okay. I'm just trying to get a feel for where your other fellow employees and your supervisors would have been when this allegedly happened.

A      The supervisors mainly were in their office, and that was at the back of the building.

(Def.'s Ex. 1 at 48-49.)  Story offers no evidence that the harassment must have come to the attention of someone authorized to do something about it.  In fact, she repeats several times that she does not know if anyone witnessed the harassment.  Based on this evidence, Riceland Foods did not know or have reason to know if Avery harassed Story on a regular basis.

**B.      Conduct of James Campbell**

Riceland Foods readily admits that Story informed the company of Campbell's alleged misconduct; however, it contends that it is entitled to summary judgment because Riceland Foods took prompt remedial action to prevent any further harassment.  "If an employer responds to harassment with prompt remedial action calculated to end it, then the employer is not liable for the harassment."  *Alvarez v. Des Moines Bolt Supply, Inc.*, No. 09-1465, 2010 WL 4629463, at *8 (8th Cir. Nov. 17, 2010).  "Factors in assessing the reasonableness of remedial measures may include the amount of time that elapsed between the notice and remedial action, the options available to the employer, . . . and whether or not the measures ended the harassment."  *Carter v. Chrysler Corp.*, 173 F.3d 693, 702 (8th Cir. 1999) (citations omitted).  Proper remedial action need be only "reasonably calculated to stop the harassment."  *Id.*

On October 21, 2008, Story spoke to Lindy Rabeneck about Campbell's inappropriate behavior, thereby notifying Riceland Foods of the alleged sexual harassment.  Rabeneck told Story that she would talk with Campbell about the situation.  (Def.'s Ex. 1 at 57.)  Campbell stated in his deposition that Rabeneck went to where he was working to speak with him about the allegation.

Q      Who said something to you?

7

A  Lindy Rabeneck.

Q  What was said?

A  That I had said something to [Story]—I can't remember what was said, but that I had said something to her or to her husband about her, and that I was supposed to—she didn't want to happen what happened to that lady over in Little Rock, or something like that.  I can't remember.

Q  What does that mean?

A  The news lady that gotten killed over in Little Rock.

* * *

Q  When this first came about, Ms. Rabeneck called you into the office, didn't she?

A  No, sir.  She come to where I was at working at that time.

Q  What was said?

A  She read me off something that was on a piece of paper.  And she says I don't believe that you would say something like this—which I didn't, 'cause I have a family and I'd just, you know, got a son.

(Pl.'s Ex. 2 at 18-21.)  After Rabeneck spoke with Campbell, Story was not the victim of any further harassment at Riceland Foods.  (Def.'s Ex. 1 at 57.)   Based on this evidence, no reasonable jury could conclude that Riceland Foods failed to take prompt remedial action reasonably calculated to stop the harassment.

**IV.**

In addition to her hostile work environment claims, Story alleges that her December 17, 2008, termination from Riceland Foods was in retaliation for complaining to Rabeneck in October 2008 about sexual harassment.  To establish a claim for retaliation under Title VII, a plaintiff must show: "1) she engaged in protected conduct; 2) a reasonable employee would have found the challenged retaliatory action materially adverse; and 3) the materially adverse action was causally

8

linked to the protected conduct." *Higgins v. Gonzales*, 481 F.3d 578, 589 (8th Cir. 2007).  Riceland Foods concedes the first two elements for summary judgment purposes but argues that there was no causal connection between Story's complaint to Rabeneck and her subsequent termination.  To demonstrate a causal link between Story's complaint and her termination, Story must show that retaliatory motive played a part in the termination.  *Kipp v. Mo. Highway and Transp. Comm'n*, 280 F.3d 893, 897 (8th Cir. 2002).

Story offers no evidence from which a reasonable factfinder could infer a causal connection between her complaint and her subsequent termination.  Story was terminated two months after she complained to Rabeneck about Campbell's behavior.  "A gap in time between the protected activity and the adverse employment action weakens an inference of retaliatory motive." *Hesse v. Avis Rent A Car Sys., Inc.*, 394 F.3d 624, 633 (8th Cir. 2005).  The Eighth Circuit has held that an interval of two months between a complaint and subsequent termination "so dilutes any inference of causation that we are constrained to hold as a matter of law that the temporal connection could not justify a finding in [the plaintiff's] favor on the matter of causal link." *Kipp*, 280 F.3d at 897.

Furthermore, Story had a history of poor performance preceding the challenged employment action.  Story disputes her disciplinary record, arguing that the warnings she received were not justified and raise an inference of pretext.  However, three of the four warnings that Story received were given before Story complained to Rabeneck about harassment.  On July 22, 2008, Story received a note in her employee file for excessive accidents.  On August 7, 2008, she received a warning notice for an inaccurate certificate of analysis.  On August 15, 2008, she received a warning notice for another inaccurate certificate of analysis and was suspended for three days.  On that notice, Freddie Hill wrote that the next offense would result in termination.  "Evidence of an employer's

9

concerns about an employee's performance before the employee's protected activity undercuts a finding of causation." *Kasper v. Federated Mut. Ins. Co.*, 425 F.3d 496, 504 (8th Cir. 2005).

Finally, Story offers absolutely no evidence that Freddie Hill, the supervisor who terminated her, knew that she complained to Rabeneck about sexual harassment. "[A] causal link does not exist if the employer is not aware of the employee's statutorily protected activity." *Jackson v. United Parcel Serv., Inc.*, 548 F.3d 1137, 1143 (8th Cir. 2008) (quoting *Wolff v. Berkley Inc.*, 938 F.2d 100, 103 (8th Cir. 1991)) (finding that, because the decision makers were not aware of the plaintiff's complaints when they made the adverse employment decision, the plaintiff could not establish a causal connection as a matter of law).

## CONCLUSION

For the foregoing reasons, the defendant's motion for summary judgment is GRANTED. Document #7.

IT IS SO ORDERED this 15th day of December, 2010.

J. LEON HOLMES
UNITED STATES DISTRICT COURT